On behalf of the appellant, Mr. David Odom, on behalf of the attorney, Mr. Vincent Lansini. Counsel, I apologize that we are a little late. We were having a conference on the previous case. And we reached a part where we could stop, and so we're back. All right. Mr. Odom, whenever you are ready. Good morning. Good morning. May it please the court. There's little question in this case that the circuit court failed to properly apply the law or the standard of Section 214.01 when it refused to consider the defendant's motions to dismiss the 214.01 petition that was filed by the plaintiffs. Today in Illinois, as our Supreme Court has made abundantly clear in several opinions, in order to be entitled to relief under Section 214.01 post-judgment relief, more than 30 days after the entry of a final judgment, certain factors must be satisfied. And a petition for Section 214.01 post-judgment relief is subject to a motion to dismiss. That's exactly what the defendants did in this case. The plaintiffs filed a complaint against the defendants first in Los Angeles County Superior Court, and then just a day after, a complaint was filed in the circuit court in DuPage County alleging a variety of misdeeds by the defendants, all stemming from a loan transaction, a production loan transaction for a film production that the defendant LLC, CityScope Productions, was engaged in. The L.A. action was the substantive action. The DuPage County action was actually an action seeking the imposition of a constructive trust, and there was a claim for conversion, all related to the L.A. County case. And actually, the injunctions sought in the Illinois action, or the case filed in the Illinois action and the injunctions sought, were all subject to the resolution of the California action. Before we get too far into that discussion, I think there's a disagreement between counsel about what our standard of review is. Is there any question that there was the 214-01, there was a motion to dismiss, and the trial court actually had a hearing, is that correct? There was oral argument on the motion to dismiss. There was not an evidentiary hearing. Well, there were affidavits and things attached, correct? There were affidavits that were, yes, that's correct. There were affidavits that were attached to the attachments to the petition. And so if we are going to review the identical documents that the trial court looked at, rather than reviewing the trial court's analysis of evidence it received, we would be looking at this de novo then? I would say so, Judge, and I would base that on the, I believe it's the Benson case that I cited in the opening brief. All right. And so what were the specific issues raised in the motion to dismiss that would defeat the 14-01? The motion to dismiss challenged the 14-01 petition on the grounds that the petition does not contain the requirements for relief. I think specifically which requirements did you find likely? Well, one, there's a requirement of due diligence. The motion to dismiss attacked the lack of due diligence alleged in the petition. The 14-01 relief also requires that the petitioner establish, not allege, but establish by a preponderance of the evidence that it has, in this case because it's a plaintiff, that there was a meritorious claim in the underlying action and a meritorious claim in the action, in the instant action. The motion to dismiss challenged that there was a, or that there is a meritorious claim in either the underlying action or the case at bar. And do you do it, does the motion and your argument relate to the substance or the fact, the substance of the claim or the fact that jurisdictionally the case had been dismissed? Well, it does both. It argues in the alternative that even if the court accepted that the petition had been properly filed, the substance in the petition was not sufficient to warrant to 14-01 relief. So specifically, the law requires that the petition demonstrate due diligence. In this case, the petition and Hord's attachments demonstrate that there was any due diligence. And factually, based upon the long case law on this issue, due diligence in this case would be an impossibility to show. The case was filed, I believe, in July, on July 26th of 2011. The case was settled and settlement proceeds were distributed less than a month later. The due diligence requirement, as established by the Supreme Court in Smith v. Air Room and its progeny, requires that if the, in this case, the plaintiff, felt like it needed more time before the judgment was entered, more time, in this case, to investigate its claims, it needs to show that there were factors beyond its control that prevented it from resisting the judgment. In this case, there certainly was. There can be none. The case was only 29 days old when it was settled. But the Los Angeles case had been pending longer than that. Actually, it had not. The Los Angeles case had been pending for 30 days. But the initial, well, all right, let's go back. Do we take into account the initial loan disbursement, which occurred much longer before? Where does the due diligence start? The due diligence, Your Honor, starts after the filing of the complaint. What the due diligence requirement is, is that the plaintiff, in this case of the parties, agreed for final judgment to be entered. Subject to enforcement. Subject to, well, no, the final judgment is entered, but there is language in the final judgment, and this is very much like the Universal Hot Door case, exact same scenario. The judgment is entered. In the order of dismissal, it states that the court retains jurisdiction to enforce the settlement agreement. As we learned from Universal Hot Door, which only makes sense, is that the parties can come in at any time before the passing of 30 days and we need to vacate the judgment without the need of a Section 214.01 petition. But once 30 days elapses, then the parties need to come before the court and have to meet, a party who wants to vacate the judgment has to meet the standard for a 214.01 relief. Because more than 30 days elapsed, in fact, seven months elapsed from the entry of the final judgment until the petition was filed, there is a requirement that the party filing the petition satisfy the requirements for relief under 214.01. None of those requirements for 214.01 relief were satisfied, and this case is particularly unique in that here the party settled the original complaint that was filed in DuPage County Circuit Court, alleged that the defendant production company and its officers obtained a $2.5 million bridge loan, absconded, that the individual, the manager absconded with $2 million of the bridge loan, only used $550,000 of the loan for the production, then absconded with the $2 million and used it for personal purchases. Less than a month after the complaint was filed, the party settled, as a part of the settlement agreement, the alleged $2 million that was absconded or unaccounted for was returned. So now to come back and allege, as is alleged by the plaintiff in this 214.01 petition, that it discovered new evidence of fraud and forgery, evidence that really does not exist in the record, but that new evidence demonstrates that the defendants, the individual defendants particularly, were unjustly enriched by the $2 million, is at best concerning because it was refunded as a part of the settlement agreement. So it's a bizarre scenario that certainly doesn't warrant 214.01 relief. Well, I mean, $2.5 million was the initial bridge loan. And maybe the $500,000, you know, for purposes of this argument, the $500,000 and some thousand dollars was used for season tickets or the production. But I thought the settlement, and it was a bridge loan to be repaid within 45 days. Correct. So now we still have $500,000 and some thousand dollars out there that ultimately would be paid back. But the terms of the payback might have been a bit loose subject to. No, that's not correct, Judge. They weren't entitled to the $500,000 back? Not from these defendants. From whom? From the other defendants. There are several pending lawsuits in the United States, in Canada, and in the United States, in Maryland, in the Federal District Court in Maryland. In this case, and the settlement agreement in this case and the dismissal order is very clear, that any sums owing to the plaintiff could not be recovered from the defendants. The defendants in this case entered into a settlement agreement, and they were required to pay a $200 settlement, and that's exactly what they did. So, and with respect to when the court says, well, the $500,000 that was, you know, for the sake of argument we'll say was used for the production, those facts come directly from the plaintiff. There's no question that that sum, I don't want to go beyond the record, but just based upon the record we have, there's no question whatsoever that that $550,000 that comes from the plaintiff was used for the production. There's no question that $2 million was refunded by the production company to the defendants, or to the plaintiffs. Therefore, what we're dealing with here is, for example, there's an allegation of seeking the imposition of a constructive trust, which requires, as an element, that there be a demonstration of unjust enrichment. Unjust enrichment is a mathematical impossibility. The money was refunded. The plaintiff knows so. This case is interesting because it is the parties settled. The defendants settled in good faith. The defendants paid the settlement agreement, or paid the settlement sum. And then seven months later, the plaintiffs come back and reinstate, attempt to reinstate the exact same claims that were filed before. The only of those claims were filed in the California case. That presents a couple of problems right out of the gate. One problem is that in order to be entitled to Section 214.01 relief, the burden is on the petitioner to demonstrate by a preponderance of the evidence that it has a meritorious claim in the underlying action. Here, that is an impossibility. The underlying action sought the imposition of a constructive trust and sought relief for conversion that was subject to the resolution of the California action. When the 214.01 petition was filed, the California action had been dismissed for more than seven months. And in actuality, the plaintiff went back to California, which I would submit would be the case, even if any of this was proper. Certainly, if you want to reinstate the case, they'd have to reinstate the California case. They went back to California, and that case was dismissed. So now they come back here on a Section 214.01 petition. They come back to the circuit court on a Section 214.01 petition without meeting any of the obligations necessary for obtaining relief under Section 214.01. What about the dismissal agreement on its face, paragraph 8, that said if there's any fraudulent conduct, et cetera, discovered, then the claim may be reinstated? Two things. One is, if the claim is to – first, there has to be a – even if you go by that document, okay, the first thing is, is that they have 30 days to raise such a claim. That's the first thing. So once 30 days passed, now they are subject to Section 214.01. That's universal outdoor. Secondly, even if you say universal outdoor doesn't apply, that provision would require the plaintiff to demonstrate fraudulent conduct or forgery. What the petition alleges is – the petition says generally that it discovered fraud and it discovered forgery without pointing to a single document that was allegedly forged. And actually, the plaintiff in many, many instances has admitted that all of the documents that they received in this transaction came directly from the bank, not from the defendants. So they still – Well, but it was Judge Wheaton who said, if I'm correct here, that all that has to be – after I grant the petition in the new – the reinstated complaint or amended complaint, that's where it properly belongs, not here. That's exactly right. That's exactly what Judge Wheaton said. Right. And why isn't that correct? Because that's – the law of Section 214.01 requires that when a Section 214.01 petition is filed, it is subject to a motion to dismiss. And that's under Brockmire and Ayrville. But you're saying that the specificity in the 214.01 petition must be as great, if not greater, than what would be required in a complaint? That's exactly right. And you base that on? I base that on Ayrville and Brockmire. Okay. And what the Supreme Court has said, unequivocally, what the Supreme Court has said is that a Section 214.01 petition – and actually what the Supreme Court said was – and Smith found that the Section 214.01 petition was fatally flawed because it did not establish by a preponderance of the evidence that the petitioner had exercised – Wasn't Erwin really decided on diligence? On due diligence, that's what I was going to say. He did not exercise due diligence. Due diligence is – But we're talking about the specificity of the underlying fraud. Yes, Judge. And the specificity of the underlying fraud goes to the second prong of the test. So once the due diligence prong is satisfied – Great. Let's get to the second prong. Right. The second prong is there has to be a meritorious claim in the underlying action and in the case at bar. And in the next step, we're getting to the specificity. Right. In order to have a meritorious claim, the plaintiff was obligated to prove – or to demonstrate by a preponderance of the evidence, not prove, but to demonstrate by a preponderance of the evidence that in this case they were alleging fraud, fraud. So you have to demonstrate by a preponderance of the evidence fraud. So you're saying that's greater than they would have to establish or demonstrate in a complaint? That's exactly what the Supreme Court said. Because in a complaint, you're just talking about fact pleading. In a 214.01 petition, you have to demonstrate by a preponderance of the evidence. That's just the law. That's the case law. And because – and if you have to demonstrate by a preponderance of the evidence, here it's not demonstrated. It's not even properly alleged. There are no misrepresentations that have been alleged. Even if you read the petition, there's no misrepresentation that was alleged. What about the three affidavits that are attached? None of the affidavits allege anything – any wrongdoing by the plaintiffs or by the defendants. They wouldn't by the plaintiffs. You're right. I misspoke, Justice Hutchinson. The affidavits and the brief challenged the plaintiffs to point to any statement that alleged fraud or forgery. And there is none. But I'll just take the first one, and maybe it's not chronologically the first one, but the Shaw affidavit indicates that although he doesn't name who took his identity, somebody took his identity. And now it comes to the proof. The only people that are involved in the transaction with Shaw, with the Shaw name, is Odom, Cityscape, whoever else was involved in the initial – and maybe Harbor, but – Harbor Bank. But those – we're not concerned about that at this particular moment. That's actually not accurate, Judge. Who was involved in the Shaw transaction were – the Shaws involved in the entire transaction were the plaintiffs, Blue Rider Finance Company, Cityscope Productions, the defendants here, and then if you pull out its manager, and Bridge Capital Corporation, which was the primary investor in this transaction. Bridge Capital Corporation brought the Shaw group. Bridge Capital Corporation and the Shaw group were investors together. Bridge Capital Corporation was – Cityscope Productions was not the investor for the movie. Cityscope Productions is the producer of the movie. The investors, the entities responsible for the monies coming in for the movie were the Shaw group and Bridge Capital Corporation. They worked with the bank, and they formed the relationship that forms the basis for the financing of the film. The money did not come from Cityscope. Therefore, for – so when the plaintiff says, well, Cityscope – we're going to let the Cityscope engage in fraud or forge documents, that loan transaction was actually contradicted between the bank and Blue Rider Finance. Are the Odoms still defendants in this case? And I know you are David Odom. Yes. But are the Odoms still defendants in this case? You mean in any other case? In this case. It's Cityscape and David and Kimberly Odom, correct? Yes. Yes. Yes. Do you have any other questions for Mr. Edwardson? I think I'm going to dispense any questions. No, thank you. You'll have an opportunity for rebuttal in a second. Certainly. Thank you. Mr. Mancini. May it please the Court, Mr. Odom, good morning. Good morning. I want to clear up a few points on the record on factual issues. Mr. Odom is playing fast and loose with some of these facts. The first fact I'd like to point to is Count 2 of the amended verified complaint, which was attached to the petition to vacate, expresses not just one, but six different misrepresentations made by defendants Cityscape and Odom related to the underlying bridge loan, which we now know were in fact fraudulent. He asserted to this Court that those allegations were not pled, they are clearly pled. The first one, for example, being that Citisco wanted to get a new financier because Quickdraw, another company, was taking too long. Well, what we now know after the dismissal of the case is that the Quickdraw transaction didn't take too long. It was pulled off the table by Quickdraw because when Mr. Odom presented Harbor Bank records and they tried to confirm those Harbor Bank records, it was discovered that the Harbor Bank records were bogus. Did Mr. Odom specifically present those or did somebody else, either a Mr. Clements, a Ms. Ware, or did somebody else present them? There are too many players for my whiteboard. I understand. It's complicated. Sarah Giles is the attorney that represented Quickdraw. Sarah Giles is the attorney that provided us this information. Sarah Giles has indicated that Mr. Odom, on behalf of Citisco, presented that bank record. There's e-mails in my possession, which haven't been tendered in discovery at this point, showing Mr. Odom receiving an e-mail indicating that that bank record is bogus. Wait, but those were not presented at the time of the hearing? They were not. Okay. But they were pled? They were absolutely pled, verified pleading. We also talk about how Mr. Shaw All right. Well, let's talk about those bank records. One of Mr. Odom's points is that those bank records have been available for some time prior to the settlement, prior to the litigation brought here in Illinois, and for whatever reason, they're not new. They may be newly discovered, but must they be? I mean, his point is that due diligence really wasn't exercised to find them before you entered into the settlement agreement, sometime after the August 2011 litigation started. The bank records that were in our possession that we're aware of, and please recall, this is 30 days after the suit was filed. The only bank records we were in possession as of August 25th were Mr. Odom's Citisco bank records, which show the wire transfers, depositing these $2 million in proceeds to his own personal accounts to buy his house out of foreclosure, these things. The bank records that reflect the Harbor Bank, fraudulent Harbor Bank records, wasn't known to us as of August 25th. Didn't Judge Wheaton allow discovery prior to the resolution? No. I thought there was some She allowed the issuance of subpoenas, and she required defendants to answer. It was a preliminary injunction hearing slash prejudgment attachment hearing that came off of an ex parte TRO order that expired on August 10th. She extended the TRO to the 25th, and we were going to then present the preliminary injunction prejudgment attachment hearing. There was no opportunity to conduct any discovery. In fact, the defense didn't have to answer until the day before the preliminary injunction hearing. But somehow in that time frame, a settlement was reached. On the courthouse steps. So, why? I mean, I guess it's, I think it's common sense. If there's a check for $2 million staring you in the face, maybe you want to take that and move on. But couldn't you have asked for more time to do discovery to make sure that you were, you were complete? We wouldn't have settled. We would not have dismissed our claims against the defendants had they not agreed that we could be allowed to reinstate the claim. And that's the thing that's missing from this entire briefing in this oral argument is Mr. Odom actively misrepresents what the settlement agreement says. He says we're supposed to bring the motion to vacate within 30 days. The settlement agreement itself says plaintiff can take no action for a period of 30 days while Mr. Odom and his companies try to obtain financing for this bogus movie. So that way, if he could provide us with another million dollars within that 30 days, well, then we dismiss everybody. That's what the settlement agreement says. So he sets up his arguments in such a way that they result in circular logic. Well, they didn't bring a claim within 30 days, but they agreed by my request to not bring a claim within 30 days because I need time to get the financing. These are key factors in Judge Wheaton's decision. And what I submit to the court in that regard is I don't think Judge Wheaton did a 214-01 finding. I think what Judge Wheaton did was said, I retain jurisdiction to enforce this order, and I find the factors have been satisfied. And I'm reinstating the case. And we can argue about the merits, the legal merits, the evidentiary merits later on. And she has that inherent jurisdiction. I forgot to ask you a question when you stepped up, and I don't mean to interrupt. That's okay. Your position is that this is an abuse of discretion issue because she did take some – well, she took argument, but there was a lot of evidence, so to speak, in that argument. I think it might be a way to look at it. I would agree with that. I'm trying to restate your argument, so I'm hoping you would agree with that. And there is confusion right now. Justice Jorgensen has an opinion out there following Vincent very strictly. Justice McClaren has an opinion out there. He adopts a more – less stringent standard, more discretionary standards. I might be on that one at some point. I don't need to debate the merits of the standard review at this stage. And the reason I don't is because I question whether this Court even has jurisdiction under 304. And it's something that I've argued in the brief but never summarized conclusively because Judge Wheaton said, I have jurisdiction to reinstate the case, and I find the factors have been met by this evidence. That's not appealable under 304 because it's not a 1401 finding. So you're saying we don't have jurisdiction? I think you don't. It's not a final appeal, or? Agreed. Good point. And the reason I say that is because nothing in the record – you look at the transcript, record purported proceedings 37 and 38. She clearly says, I find that I retain jurisdiction to reinstate this case. I find the factors have been met. We'll deal with those evidentiary and legal rulings down the road. She would – retains jurisdiction to enforce the agreement. Correct. And then, therefore, to have a hearing on it. And that's where you hang your hat for abuse of discretion rather than even getting into the whole 1401. Exactly. I don't want to paraphrase incorrectly. No, that's exactly right. And that's why 304, Supreme Court Rule 304, doesn't apply in this instance. Because nowhere in the court's orders does she say that I'm finding pursuant to 1401 that these particular factors have been met and I'm reinstating the case. She's held different. But she never – I mean, and then the other side of that coin is she might not have ever addressed those issues but for the petition and a motion to dismiss, which clearly can be brought on a 1401. We're not disputing that. No. So she looks at the allegations in the motion to dismiss. She looks at the allegations in the 1401. And how then does she – I mean, I know her original order says retains jurisdiction, but she's looking at this motion or this petition and this motion. If you had just walked in the door and said, Judge, we'd like you to take jurisdiction of this, she would have said, give me a pleading. You gave her a pleading. So how do we deal with those pleadings in this process? I think exactly how Judge Wheaton wanted to. Because if you look at the written order, she found that the motions to dismiss under 2615 filed by the defendants were just simply premature. She was allowing them to refile. Did she specifically say that? It's in the order. Okay. Point number one, defendant's motion to dismiss, plaintiff's motion to enforce settlement agreement and vacate dismissal order are hereby denied as the 2615 motions are premature. It is, but do the sick. So I think if you look at the actual record on the appeal, this isn't a 1401 resolution which is appealable under 304. Because you would do discovery on 1401, you would do – and you didn't do any of those or what? You don't have to. I mean, the Vincent case makes it clear there's five possible dispositions, summarily denied, summarily grant denied, deny or grant after evidentiary hearing. I would submit to the court that what we submitted in the actual motion satisfies 1401. We brought the motion in conjunction with a 1401 motion. We brought both. We said you've retained jurisdiction to enforce. Here's the terms. Here's the evidence. Please enforce. And then we also said under 1401, you also have jurisdiction. And I'll tell you why we did that is because I think there was an error on the dismissal order. If you look at the dismissal order, with prejudice was stricken out four different times except the last time at the bottom where it said with prejudice subject to the terms of the settlement agreement with the court to retain jurisdiction to enforce. And it also says with an e-mail. And do we have that e-mail somewhere in this record? We do. It's part of the motion to vacate. Okay. So I was looking for it earlier, but okay. It's part of the motion to vacate. It's an exhibit to that motion. It's in – the e-mail itself has been signed. Do you have a page number per chance? It would make it a little easier. Off the record. I'd have to look in my brief. All right. I'll look. But I definitely cited the record in the brief. Okay. And now when you look at the actual underlying facts and what we've proven or what we can prove, at least by affidavit at this point, it's all learned after August 25, 2011. After that date, what we learned for the first time is that the Harbor Bank records are bogus because Harbor Bank files affidavits saying these are bogus records. Well, of course alarm bells go off. Were those filed in the California court? They were actually filed in the federal court of Maryland. Okay. District of Maryland. Thank you. Do you have any responsibility to look at those or look for that? We found that we got them in September, a month after the dismissal. So the due diligence argument, it's counterintuitive to say we should have known something that we couldn't have possibly known. And then what happens is we start investigating these Harbor Bank records. We find out from their attorney, Ms. Giles, that they, in fact, had confirmed that they were bogus records before the quickdraw transaction. We also confirmed that this scheme was perpetrated by Mr. Odom and Mr. Clements, his associate. Now, how are they associated? They're both managing members of Link Resources, which is the managing member of Bridge Capital Corporation. Who provides one of the escrow agreements? Bridge Capital Corporation for $8 million, which is bogus. So for Mr. Clements or Odom to stand up here and say there's no way they can tie me at Bridge Capital on the bogus bank records, that's a fallacy. He, as a member of Link Resources, is the managing member of Bridge Capital Corp, who put up this bogus $8 million in escrow to which secured our loan. And then we get to the Shaw Group. When we investigate the Shaw Group, Mr. Shaw comes forward and says, that's not my signature on these escrow agreements. I signed with Planet. I've never heard of Planet before. I've never heard of Mr. Odom before. I've never heard of this movie before. He confronts Mr. Clements on that regard. Mr. Clements, in an email, which is attached to the motion, says, I and Mr. Odom stole your identity in order to secure the financing for this great fund. That's a question that's unrebutted. There's nothing, no affidavit, nothing submitted by the defendants disputing that. So we ask Mr. Shaw, and he says, yeah, I didn't have $5 million at Harbor Bank. I didn't agree to put that money up in escrow. And he signs an affidavit November 17th of 2011, some 75 days after the dismissal of his case. He does say that he had made small investments through either Link or Bridge, one of them. Correct. He knew Mr. Clements previously. Nothing to amount to $8 million or $5 million or whatever that alleged share was. Correct. And we suspect, which hopefully we'll confirm one day when discovery is taken, that that's where Mr. Clements got his information to steal from, was from those small dealings. So then we go to the next step, and we find out how did Mr. Clements and Mr. Odom come to this situation with Mr. Shaw? Well, they did it through Ms. Lorna Ware, who received $61,000 of the loan as part of this transaction. Ms. Ware is an attorney who basically introduced Mr. Odom and Mr. Clements to each other. That's pled in the verified complaint. She introduces them, and she's fully aware that the quick draw transaction failed because of forged bank records. Another source of information for us to establish that Mr. Odom and CityScope were aware that the bank records were in fact forged. So when you look at the actual meritorious claims, the question of whether or not fraud occurred is undeniable and unrebutted at this stage. Mr. Odom presented bogus bank records representing alleged security interest on a $2.5 million bridge loan, knowing that they were previously rejected in another transaction because they were bogus. That is an omission of material fact, if there ever is one. That's fraud. And the fact, I mean, Mr. Odom makes a case that $2 million had been returned, and I assume it's not at issue here, but then there's some additional outstanding, probably plus interest, which would be in the original case, but he says that's not part of this litigation. Is that incorrect in your mind? I don't understand it. I don't understand it. It just doesn't make sense to me. The loan was taken out by CityScope LLC with its managing member, David Odom, borrowing $2.5 million. It didn't say if you use some of this money for the film production, you don't owe it back to us. It's a loan. I mean, the agreement is pretty basic with the handwriting. Was there a forgiveness of the $500,000? I cannot interpret anything in this settlement agreement that substantiates a release. In fact, it's to the contrary, as pointed out by Justice Jorgensen. If we discover that they engaged in fraud or fraudulent conduct related to the loan transaction of the agreement, for the remaining balance owed, we may reinstate this case. Remaining balance owed, it's clear language. It's unambiguous that we can collect the remaining balance. And on top of it, that agreement says we can reinstate any and all claims against the defendants in this regard. For the balance. For the balance. And that's what we're seeking at this point. So with that being said, I take issue with some of the misrepresentations made in this case on the factual record. I think it's important that the factual record be made clear. And I think, again, once that is clear, we've satisfied both elements of the reinstatement pursuant to the court retaining jurisdiction and the 1401 elements, if we even get to that point. Thank you. Thank you. Mr. Odom, if you wish to respond, you may. Mr. Mangan. First and foremost, the 304 argument is inappropriate here because it was never raised before today. Counsel, you know we have an independent obligation to determine whether we have jurisdiction, so it's always relevant. Certainly, Judge. Counsel started off by stating that these misrepresentations that were alleged, and he starts with the quick draw transaction. And then he completely misrepresents what's in the record. What's in the record, Your Honor, Sarah Giles is not an attorney, even as they argue. Sarah Giles is a banker in the United Kingdom. And the quick draw transaction was a transaction that was brought to Citiscope, this is according to their own documents, by a lawyer from the U.K. that was representing Citiscope. His name was Jonathan Blair. And what they argued in their own pleadings was that Jonathan Blair explained the details of the quick draw transaction, not Citiscope, not any of the defendants, but Jonathan Blair, who had a longstanding relationship with the plaintiff, explained the details of the quick draw transaction. Now, one thing that I have a – Well, all right. And let me stop you there, and I don't mean to interrupt your train of thought. But assuming that the record does not reflect a specific finding on that issue, would not that then be consistent with Justice Jordan – or, I'm sorry, Justice Wheaton's position that she retains jurisdiction, she's going to go ahead, and she'll deal with the merits later? What we're doing – what they're doing is they're throwing the law aside. The law is clear. Well, did she ever grant your motion to dismiss? Did she say, I grant the motion to dismiss? Do you mean the original case in which we're going to sell it? Yes. No, no, no, no, no. In August, when this all comes up, did she say – when he filed this 214-01, and you or whoever was counsel at the time filed the motion to dismiss, when Justice – boy, I'm confused this morning. Judge Wheaton. Judge Wheaton, thank you very much. It's okay. Judge Gilroy-Johnson, Judge Hutchinson, it all works. But when Judge Wheaton said, I retain jurisdiction, did she say, I grant your motion to dismiss? No. I deny your motion to dismiss. She said, your motion is premature. Did she say, Mr. Mancini, I grant the 214-01 motion? Yes, she did. And where in particular did she say those words? Well, she didn't say verbatim. What she said was, I'm granting the motion to reinstate the case. Right. That's what she said. Is that different than granting the 214-01? No, that's what she did. The motion to reinstate the case was a 214-01 motion. That's the petition that was brought. Weren't there two allegations in this motion that came up to retain jurisdiction or to consider 214-01? No. What the plaintiff did was the plaintiff filed a motion to enforce a settlement agreement to reinstate the case pursuant to Section 214-01. That's the motion that was filed. It was a 214-01 petition. I submit to the court that if Judge Wheaton retained jurisdiction beyond 30 days, which, however, is not possible under the Illinois law, but even if the argument is that she retained jurisdiction, then a 214-01 petition would not be necessary. There would not be the need. A 214-01 petition is the mechanism by which a final judgment is vacated more than 30 days after the entry of the final judgment. That's what 214-01 is. That's what 214-01 is to be used for. If Judge Wheaton retained jurisdiction, there would be no need for a 214-01. The plaintiffs could come in basically on a motion to reinstate outside of Section 214-01 because there is no loss of jurisdiction. But if Judge Wheaton never said, and I've seen previous Judge Wheaton records on 214-01 and other dispositive motions, if she never made any findings on the issues raised in the motion to dismiss, how do we have a final resolution of either your motion or the 214-01? That is exactly correct. Where we have a final resolution is in the final judgment that was entered in August, pursuant to the settlement agreement. That was a final judgment. After that final judgment was entered, more than seven months passed. The plaintiffs come back on a Section 214-01 motion. When they come back on a Section 214-01 petition, the law requires that that petition meet the standards for relief under Section 214-01 for that petition to be granted. And that standard was not met. And there were a couple of things that I just really wanted to hit on. Counsel argued that the Harbor Bank records were bogus and that there are these e-mails that are, you know, somewhere that he has possession of. And that, I would submit, would be significant evidence of, even though it wouldn't constitute pleading fraud with specificity, but it certainly would provide some legitimate evidence of fraud or some knowing misrepresentation. But none of that was ever presented. That's not in the record, and it's not been pled either. It hasn't been discovered yet. It hasn't been discovered yet. Well, it has to have been discovered. He says he's done it. Well, no, you haven't asked for the discovery. You went ahead on your motion to dismiss, and you didn't say on what basis do you bring this 214-01 motion and these allegations. Because the burden is on the petitioner. Under our law, the burden is on the petitioner to demonstrate by a preponderance of the evidence that it has a meritorious claim. But it's not notice pleading. It's not fact pleading. The burden under Errin, the Supreme Court has stated, not just Errin, in Brockmeyer, and then this court in Dominguez, the first district in the General Motors case, has repeatedly stated that the petitioner has an obligation to demonstrate by a preponderance of the evidence that it has satisfied its due diligence requirement and that it has a meritorious claim in the case at bar and in the underlying action. And you don't think those affidavits do that? Those three affidavits? There are three affidavits. Not one affidavit suggests wrongdoing by the plaintiff, by the defendant. Not a single affidavit suggests that. What the affidavits say, and this is a really big point, Mr. Mancini argued before this court a few minutes ago that Mr. Odom and Mr. Clemmons are partners or members of major resource partners. That is inconsistent with what they argued in their pleadings. Bridge capital. Or bridge capital. You can say bridge capital. Bridge capital, link resource partners. There is no evidence whatsoever of any such allegation. That allegation is pulled from thin air, from whole cloth, and it's inconsistent with what they plead. They plead a broker attorney, which is what the broker attorney's job is, and she was paid a commission which was $61,000. A broker attorney introduced the defendant and Mr. Clemmons. And then they stand here and say that now Clemmons and the defendants are somehow members and partners in a company. There's nothing could be further from the truth. It's argued in our court. There's no evidence in the record of it whatsoever. It's just pulled from whole cloth. It's a fantasy. And we are trying to stick to the record. And there's nothing like that in the record whatsoever. And the argument about Judge Wheaton retaining jurisdiction, Judge Wheaton does not have the power to retain jurisdiction. You can give her the power. I'm sorry? You can give her the power, and both parties agree. Okay, under the universal outdoor case, what happened was the parties entered into a settlement agreement. The court entered a final judgment based on the settlement agreement, pursuant, and the court retained jurisdiction to enforce the settlement agreement. Exact same fact scenario. The plaintiff came back later, more than just like this case, more than seven months after entry of the final order and said, hey, I want you to enforce the settlement agreement, Judge, and reinstate this case. And the circuit court refused to reinstate the case under Section 214.01 Browns. The appellate court affirmed, and the appellate court affirmed saying that the trial court did not have the power to retain jurisdiction beyond 30 days after entry of the final judgment. What the court could do is the court could, or the parties could do, if the parties wanted the court to retain jurisdiction, then it had to continue. The parties had to continue as if the court had maintained jurisdiction. And that continuance, or acting like the court, for example, going before the court with motions, otherwise appearing before the court not objecting, that would revest, and that is the language that the court uses, revest the court with jurisdiction, because the trial court does not have the authority to trump the law. There are two cases, to my knowledge, pending before the Illinois Supreme Court now on the doctrine of revestment. One of them from this district, and I think one from the first district. It is possible that this court would consider waiting for those particular decisions. If I may, Your Honor. And understood by both parties. I'm sorry, Your Honor, that would not be necessary here, because here there's no question, there's no issue about revesting. Because here, the plaintiffs don't allege, and the defendants certainly don't concede, or even offer, that the parties acted in a way to revest the court with jurisdiction. There was no contact with the court from the time of the dismissal until seven months later. So there's no revesting argument in this case. You said you had a couple of points. Yeah. Well, I really hit the sergiles issue. What I would ask the court, Judge, is that there's been much discussion about Judge Wheaton's thinking and much discussion about the record. And my sincere request is that we are limited to the record, and that we look at that record, because when counsel stands here and he's providing the court with arguments and facts that are just not in the record, and it is not appropriate under Illinois law, it is not appropriate to look at a Section 214.01 petition, and that's what we have. It is not appropriate to look at a Section 214.01 petition and say, well, we need discovery in order to determine whether or not the allegations contained in the petition are valid or warrant the granting of the petition. That's not how the law works. The Section 214.01 petition must establish by a preponderance of the evidence that there is due diligence, and counsel didn't even speak of due diligence because there is none. And it is absurd to assume that a case that was dismissed pursuant to settlement agreement less than 30 days after it was entered, that the plaintiff didn't have time to otherwise investigate his case. Under Illinois Supreme Court law of Rothmeier, the plaintiff had an obligation. If it wanted to investigate his case, it certainly could. And its due diligence obligation requires it to show how it was prevented from doing that. It wasn't prevented from doing that. It could have resisted the judgment. That's the language that this Court uses in Domingo. It could have resisted the judgment and gathered all the information it wanted. It chose not to. They took the $2 million check. They settled. Now they come back. They haven't refunded the $2 million, and they want a second bite at the apple. That, under Illinois law, is inappropriate. How do you get past the findings that Judge Wheaton made at no time in this transcript? As you can see, I've been flipping through it. Does she ever say, I am granting a 214-01 petition? She grants, and I quote, I'm looking at it right here, subject to the settlement agreement. You interject, and then the Court says, okay, I'm going to grant the motion to reinstate the case. The motion, Your Honor? I'm going to grant the motion to reinstate the case. Exactly, Judge. The motion to reinstate the case was a 214-01 motion. That's the motion that she granted. The motion is a motion to enforce settlement agreement and reinstate the case pursuant to Section 214-01. That's the motion that she granted. Well, as we all know, the transcript controls over anything that's written. Right, Judge. When she says I'm granting the motion to reinstate the case, the motion that we're arguing, the motion that we're there for, the motion that was briefed, the only motion pending before the Court was a 214-01 motion. There was no other motion pending before the Court. Okay. All right. Thank you, Counsel, for your argument. We will, and we may, delay this case in the event that our review of the record indicates otherwise, but we will make a decision in this matter in due course. We will now stand adjourned.